IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES ALTERIQUE BROWN, | : | CIVIL NO. 3:CV-04-1769 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| RUSSELL HENDERSHOT, ET AL., | : | |
| Defendants | : | |

## MEMORANDUM AND ORDER

Plaintiff, James Alterique Brown ("Brown"), acting *pro se*, initiated this action on August 11, 2004, pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971) and the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* (FTCA). The action is proceeding *via* an amended complaint. (Doc. 85). Named as defendants are the following individuals: Russell C. Hendershot, Edguardo Ong, and David Steffan. Presently pending is defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b) and for summary judgment pursuant to FED.R.CIV.P. 56 (b). (Doc. 86).

I. Motion to Dismiss

A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim that fails to assert a basis upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In the context of a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d

Cir. 1996)). Although the court is generally limited in its review to the facts alleged in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that, although "a district court ruling on a motion to dismiss may not [generally] consider matters extraneous to the pleadings[,] . . . a document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment") (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1224 (1st Cir. 1996)).

The court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant on notice of the essential elements of the plaintiff's cause of action." Langford, 235 F.3d at 847. The court must grant leave to amend before dismissing a complaint that is merely deficient. See Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

B. Discussion

1. Bivens claim

Defendants seek to dismiss certain civil rights claims for failure to exhaust administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. 42

U.S.C. § 1997e(a). With respect to the exhaustion of administrative remedies, 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. The PLRA requires "proper" exhaustion, meaning that the inmate must follow the procedural requirements of the prison grievance system. Spruill v. Gillis, 372 F.3d 218, 228, 231 (3d Cir.2004). If the prisoner fails to follow the procedural requirements, then his claims are procedurally defaulted.

The Bureau of Prisons has established a multi-tier administrative remedy procedure whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (1997). First, "an inmate shall . . . present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Second, if an inmate . . . is unable to informally resolve his complaint, he may file "a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The warden has twenty days in which to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the warden's response may submit an appeal, on the appropriate form (BP-10), to the appropriate Regional Director within twenty calendar days from the date the warden signed the response. 28 C.F.R. § 542.15(a). An inmate who is not satisfied with the Regional Director's response may submit

an appeal, on the appropriate form (BP-11), to the General Counsel within thirty calendar days from the date the Regional Director signed the response. Id.

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (detailing history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Thus, federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).

On February 13, 2004, Brown submitted a request for administrative relief complaining of defendant Hendershot's deliberate indifference to his severe stomach problem. He specifically took issue with Hendershot's decision that "no further action will be utilized to determine the cause of pain, despite Brown's experience of pain." (Doc. 90-5, p. 47). The warden concluded that he was receiving adequate medical care. Hence, on March 1, 2004, the grievance was denied. (Id. at p. 48). Brown appealed the grievance. (Id. at p. 49). On April 5, 2004, the grievance was denied. (Id. at p. 51). It was again concluded the Brown was receiving appropriate medical treatment. An appeal to the General Counsel followed. (Id. at p. 52). The appeal was denied on June 10, 2004. (Id. at p. 53).

Defendants seek to dismiss Brown's claims that defendant Hendershot violated his First Amendment and Fifth Amendment rights. (Doc. 90-5, pp. 45-64). A review of the record

indicates that Brown has made no attempt to avail himself of the administrative process with respect to these claims. Consequently, defendants' motion will be granted as to these claims.

Defendants also seek dismissal of the claims lodged against Ong and Steffan based on plaintiff's failure to specifically identity them in his grievances. Defendants contend that neither of these defendants was named and that "Brown was required to file specific grievances raising his claims against the named Defendants." (Doc. 89, p. 12, citing Curry v. Scott, 249 F.3d 493, 505 (6th Cir. 2001) (requiring that a prisoner file defendant-specific grievances)). This Court, in relying on Spruill, has specifically rejected this approach.

> In Spruill, the Third Circuit specifically rejected the approach in Curry. "Courts . . . have presumed that the general objectives that inspired § 1997(e) also determine how a prisoner must go about exhausting state remedies. The sixth circuit, for example, demands that the administrative grievance name each person who ultimately becomes a defendant." Spruill, 372 F.3d at 230 (citing Curry, 249 F.3d at 504-05). The Spruill court then rejected this approach in favor of analyzing the detail required by the grievance system. Id. We recognize that Spruill ultimately found that the plaintiff had failed to properly identify the defendant in the grievance process and thus had procedurally defaulted on his claim against that defendant. Id. at 234. The court did so, however, only because the grievance system required greater detail.

See Freeman v. Inch, 2005WL 1154407 at *4, n. 4 (M.D. Pa. May 16, 2005). The grievance system required Brown to "place a single complaint or a reasonable number of closely related complaints on the form" and to "complete the form with all requested identifying information." 28 C.F.R. § 542.14. There is no requirement that each defendant be specifically named.

5

Review of the grievance forms reveals that, as Brown progressed through the administrative remedy procedure, in addition to identifying defendant Hendershot, he also indicates that he was dissatisfied with the medical care provided by the "FCI-Schuylkill Medical Department" and "staff from the medical department." (Doc. 90-5, pp. 49, 52). This is sufficient to place administration on notice that plaintiff had a complaint against individuals other than Hendershot. Further, responses to Brown's grievances indicate that prison administration was on notice in that, each time, it was concluded that the medical staff was addressing his medical concerns and that he was being provided appropriate medical care. (Doc. 90-5, pp. 48, 51, 53). Defendants' motion will be denied with respect to the Eighth Amendment claims against defendants Steffan and Ong.

2. FTCA

The administrative remedy process must be finally decided prior to the commencement of an action in federal court pursuant to the FTCA. See 28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106 (1993) ("the command that an 'action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally decided by the agency in writing' . . . is unambiguous."). The filing of an amended complaint does not cure the defect. See Hoffenberg v. Provost, 154 Fed. Appx. 307, 310 (3d Cir. 1005) (citing McNeil, 508 U.S. at 111-112).

Defendants note that Brown filed an administrative tort claim on August 31, 2005, more than one year after the present action was initiated. (Doc. 1). They argue that "[b]ecause Brown failed to exhaust his administrative remedies *prior* to instituting suit as required by the PLRA,

6

the Court lacks jurisdiction to entertain Brown's negligence, malpractice, intentional infliction of emotional distress and invasion of privacy state law claims raised in the second amended complaint. . . . See Roma v. United States, 344 F.3d 352, 363 (3d Cir. 2003)." (Doc. 89, p. 17) (emphasis in original).

Plaintiff concedes this argument. Specifically, he recognizes that the filing of the administrative tort remedy did not cure the procedural defect and agrees that "defendants' motion must be granted as a matter of law." (Doc. 97, p. 18). Defendants' motion to dismiss will be granted.

Likewise, Brown concedes defendants' argument that the claims of assault and battery cannot be pursued *via* the FTCA. (Doc. 97, p 17). The United States is not liable for claims arising out of an assault and battery committed by federal employees acting within the scope of their employment unless the employee was an investigative or law enforcement officer. 28 U.S.C. § 2680(h). It is undisputed that defendants were working within the scope of employment. (Doc. 97, p. 17, n. 8). As such, this claim is subject to dismissal.

## II. Motion for Summary Judgment

Based on the above conclusions regarding the motion to dismiss, the only claim that remains to be considered is the Eighth Amendment claim of deliberate indifference to Brown's serious medical needs lodged against defendants Hendershot, Steffan and Ong.

### A. Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). See also <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 231-32 (3d Cir. 2001). "In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party." <u>Reeder v. Sybron Transition Corp.</u>, 142 F.R.D. 607, 609 (M.D. Pa. 1992) (citing <u>White v. Westinghouse Elec. Co.</u>, 862 F.2d 56, 59 (3d Cir. 1988)). <u>See</u> <u>also</u> <u>Saldana</u>, 260 F.3d at 232. A fact that will affect the outcome of the case under the governing law is "material." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

"Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint." <u>Schiazza v. Zoning Hearing Bd., Fairview Tp., York County, Pennsylvania</u>, 168 F. Supp. 2d 361, 365 (M.D. Pa. 2001) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)). <u>See</u> <u>also</u> <u>Saldana</u>, 260 F.3d at 232. Rather, the nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322-323.

B. Statement of Facts

Brown was first seen by defendant Hendershot on March 20, 2003, at which time Brown advised Hendershot of his "severe stomach condition." (Doc. 97, pp. 5, 25; Doc. 90-2, p. 65). It was noted that his symptoms persisted, despite consistent medical treatment. A prescription was filled and he was to follow-up with the medical department in forty-five days. In addition, an appointment with a gastrointestinal ("GI") specialist was to be scheduled. (Doc. 90-2, p. 65).

Over the next few months, he was seen on multiple occasions for "non-specific" abdominal pain. (Doc. 90-2, pp57-61). Each time, a physical examination revealed no abnormalities. Medication was prescribed and, in some instances, blood work and other tests were ordered. (Doc. 90-3, pp. 45, 52, 53).

On June 10, 2003, defendant Hendershot completed a consultation sheet describing plaintiff's ailments for the GI specialist. (Doc. 90-4, p. 58). Plaintiff was described as having constant abdominal pain for five years which is somewhat relieved by bowel movements. Defendant Hendershot notes that there is no family history of inflammatory bowel disease. He further indicates that an upper GI was done in 2002. The radiology report stated that "mild inflammatory changes of the proximal duodenum suspected" and "no evidence of ulcer disease identified." (Doc. 90-4, p. 17). It was also noted that Brown had a "KUB" exam in May 2003 which revealed the following: "unremarkable exam showing no urinary tract calculus within either the renal or ureteral regions;" "unremarkable bowel pattern although there is moderate feces but no dilatation. Unremarkable visualized bones;" "Unremarkable KUB exam." (Doc. 90-4, p. 15).

The GI specialist saw Brown on July 10, 2003. It was recommended that fiber be included in the treatment regimen and that he be placed on medication. (Doc. 90-4, p. 58; Doc. 90-2, p. 58). If there was no improvement in his condition, it was recommended that he have a CT scan and an EGD.[1] (Id.).

Over the next several months, Brown complained of the side effects from the new medication. (Doc. 90-2, pp. 53, 56). In September 2003, the possibility that plaintiff was suffering from irritable bowel syndrome was again raised. (Doc. 90-2, p. 51). On September 12, 2003, defendant Hendershot requested a CT scan of the abdomen and pelvis because of complaints of abdominal pain, nausea and constipation. (Doc. 90-4, p. 11). The CT scan was performed on November 3, 2003 and the following was reported:

> No active lesion was identified. Unremarkable liver, spleen, gallbladder, pancreas, kidneys and adrenals. No adneopaty or ascites.
>
> The oral contrast has progressed to the rectum with no obstruction or bowel wall thickening. Unremarkable stomach. No evidence of diverticulitis or appendicitis. The kidneys show normal excretion with n o hydronephrosis.
>
> Negative CT abdomen-pelvis.

(Doc. 90-4, p. 11). On December 2, 2003, the results were discussed with Brown. (Doc. 90-2, p. 56). On December 5, 2003, defendant Hendershot examined plaintiff and prescribed additional medication, and ordered a number of laboratory tests, including a "constipation work-

---

[1] "EGD" is an abbreviation for Oesophagogastroduodenoscopy" wich enables a gastroenterologist to examine the oesophagus, stomach and duodenum using a thin tube as a scope. (Doc. 90-2, p. 4).

up." (Doc. 90-2, pp. 48-49).

Defendant Steffan examined Brown on February 27, 2004. According to Brown, during the examination, Steffan "deliberately inflicted pain upon [him] by pushing on a tender area of plaintiff's stomach for no need or provocation." (Doc. 85, p. 5). Steffan states that as part of his physical examination, "he palpated Brown's abdominal area . . . to rule out appendicitis." (Doc. 90-5, p. 39). "Brown is therefore mischaracterizing the palpation of his abdomen during a physical examination as 'pushing.'" Id. Steffan also advised Brown to continue with his current treatment regimen and directed him to report to the chronic care clinic on March 1, 2004, to treat with Dr. Hendershot.

Brown was seen by Defendant Hendershot in the following months and it was concluded that he was suffering from irritable bowel syndrome. (Doc. 90-2, pp. 41-42, 44, 46). Plaintiff contends that he was not referred to a specialist during this time period because outside medical care was too costly. Defendant Hendershot states as follows:

> Brown presented no symptoms requiring a referral to a specialist, period. . . . Brown was not referred for an EGD because he presented none of the signs signs [sic] or symptoms that indicated an EGD should be conducted. He did not suffer any weight loss, anemia (iron-deficiency type), symptoms of gastroesophageal reflux, odonophagia (painful swallowing), or sysphagia (difficulty swallowing). Brown's weight remained stable, and a cat-scan of the abdomen and pelvis was normal. He had an upper GI in January of 2002 that showed no signs of gastric ulcer or obstruction. Brown did not receive an EGD because and EGD was not medically necessary.

(Doc. 90-2, pp. 3-4). Hendershot further states that his "review of Brown's medical records shows that Brown has been examined 56 times between March of 2003 and February 2006.

Inmate Brown was evaluated 20 times by practitioners for abdominal pain and he was examined 26 times for other medical complaints from constipation, to hemorrhoids, to herpetic infections." (Doc. 90-2, p. 5).

C. Discussion

To demonstrate a prima facie case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that defendants acted "with deliberate indifference to his or her serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). There are two components to this standard: First, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir.2002). The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, where the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. See Spruill, 372 F.3d at 235 (quoting White v. Napoleon, 897 F.2d 103, 109 (1990)); Monmouth County Correctional Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987).

This test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to

second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa) aff'd, 103 F.3d 691 (1996) (citing Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. Nottingham v. Peoria, 709 F. Supp. 542, 547 (M.D.Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. Monmouth County Correctional Inst. Inmates v. Lensario, 834 F.2d 326, 346 (3d Cir. 1987). Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. White v. Napoleon, 897 F.2d 103, 108-10 (1990).

Throughout the relevant time period, Brown was seen on numerous occasions by various medical personnel. Each and every time he was seen, he was evaluated and was prescribed medication to ease his discomfort. Diagnostic tests were ordered, and performed, to facilitate treatment, and he was referred to an outside specialist to evaluate his condition. There is no indication that Brown did not receive medical treatment because it was too costly. In fact, the only test that has not been performed is an EGD, which defendants contend is not warranted given Brown's symptoms. Brown submits nothing that would lead this court to conclude that the decision not to have an EGD performed was deliberately indifferent.

It appears from the record that given the symptoms reported, tests conducted and

examinations performed, that Brown suffers from irritable bowel syndrome and, unfortunately, despite all the medical intervention, defendants are simply unable to make him comfortable. This is clearly a case where Brown has been given medical attention and is dissatisfied with the results. An inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. Durmer, 991 F.2d at 69; Spruill, 372 F.3d at 235. Courts will not second guess whether a particular course of treatment is adequate or proper. Parham v. Johnson, 126 F.3d 454, 458 n. 7 (3d Cir. 1997). Under these circumstances, and based upon the well-documented course of treatment set forth in the record, Hendershot and Steffan were not deliberately indifferent to Brown's serious medical needs. Defendants' motion will be granted as to these defendants.

As concerns the non-medical defendant, defendant Ong, if a prisoner is under the care of medical experts, as is the case here, a non-medical prison official cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are misleading (or not treating) a prisoner. . . ." Spruill, 372 F.3d at 236; Durmer, 991 F.2d at 67. Ong states that "[o]nly a medical officer (*i.e.*, physician) has the authority to refer an inmate for outside medical care. I am not a physician. I therefore defer to the physicians to determine whether or not an outside consultant is warranted in treating an inmate's health complaint or medical condition." (Doc. 90-5, p. 36). Additionally, he defers "to the physicians' determinations concerning the types of medical treatment warranted in caring for the medical needs of inmates." (Id.). Summary judgment will also be granted in favor of this defendant.

An appropriate order will issue.

BY THE COURT:

s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court

Dated: September 19th, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES ALTERIQUE BROWN,  :   CIVIL NO. 3:CV-04-1769
           Plaintiff  :
             :   (Judge Munley)
      v.  :
             :
RUSSELL HENDERSHOT, ET AL.,  :
           Defendants  :

## ORDER

AND NOW, to wit, this 19th day of September 2006, upon consideration of defendants' motion to dismiss and for summary judgment (Doc. 86), it is hereby **ORDERED** that:

1. Defendants' motion to dismiss is GRANTED in part and DENIED in part.

    A. As concerns the <u>Bivens</u> claims, the motion is GRANTED for failure to exhaust the First and Fifth Amendment claims lodged against defendant Hendershot but DENIED with respect to defendants Steffan and Ong.

    B. The motion is GRANTED with respect to the claims brought under the FTCA. The FTCA claims are dismissed in their entirety.

2. Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to ENTER judgment in favor of defendants Hendershot, Steffan and Ong and against plaintiff on the Eighth Amendment claim.

3. The Clerk of Court is further directed to CLOSE this case.

4. Any appeal from this order is DEEMED frivolous and not in good faith. <u>See</u> 28 U.S.C. § 1915(a)(3).

BY THE COURT:

s/<u>James M. Munley</u>
JUDGE JAMES M. MUNLEY
United States District Court